UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANGELICA BUENO, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 22-cv-617 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**ORDER**

Plaintiff Angelica Bueno brought this lawsuit about a mistake on her credit report prepared by Defendant Experian Information Solutions, Inc. The credit report mistakenly listed an outstanding debt of $2,810 when, in reality, it was discharged in bankruptcy.

That mistake appears to have been a blessing, and it wasn't disguised. The report listed the debt in the "Positive" section of the report, not the "Negative" section of the report. The credit report suggested that she was up-to-date in paying her debts, not stiffing creditors through bankruptcy. Keeping up to date on debts is a good thing, not a bad thing.

Sometimes mistakes cut against you. But sometimes they help you. And here, it appears that Bueno benefitted from the mistake. Paying people back makes debtors look good, not bad. That's why the report listed the outstanding debt as a positive, not a negative, when it evaluated her creditworthiness. It was wind in her sails, not an anchor.

Not all mistakes are injuries. On this record, Bueno does not appear to have suffered a concrete, actual injury. And if she did not suffer an injury, this Court lacks subject matter

jurisdiction. For that reason, the complaint is hereby dismissed. But the Court will allow the parties to pursue jurisdictional discovery before closing the case.

On July 2, 2021, Plaintiff Angelica Bueno filed for Chapter 7 bankruptcy in the Northern District of Illinois. *See* Cplt., at ¶ 50 (Dckt. No. 1). Bueno's bankruptcy petition listed 15 debts that she sought to discharge. *See* Bueno Bankr. Pet., at 25–29 (Dckt. No. 13-5). One of those debts came from an account with Upstart Network, Inc. *Id.* at 29.

Bueno received an order of discharge from the bankruptcy court on September 22, 2021. *Id.* at ¶ 51. After Bueno received her Chapter 7 discharge, Experian prepared Bueno's credit report. *See* Cplt., at ¶ 62 (Dckt. No. 1). Experian prepared her report as of January 21, 2022, roughly four months after the order of discharge. *See* 1/21/22 Credit Report (Dckt. No. 14-1).

The credit report showed that Bueno had received a discharge of her debts in bankruptcy. *See* Cplt., at ¶ 55 (Dckt. No. 1) ("In the Public Records section of Plaintiff's consumer report, Defendant included the bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.").

So far, so good. Bueno had, in fact, discharged her debts in Chapter 7 bankruptcy. And the credit report said as much.

But the credit report did not report everything about Bueno's bankruptcy accurately. The report "inaccurately reported" the status of Bueno's now-discharged account with Upstart Network. *Id.* at ¶ 62. Instead of showing that debt as discharged, Experian's credit report showed that the account had a status of "Open" with a balance of $2,810. *Id.* In reality, the debt had been discharged and the account had a $0 balance. *Id.* at ¶¶ 61–62.

So, instead of showing that Bueno's debt to Upstart Network had been discharged in bankruptcy, the credit report showed that the account was open. And it showed that Bueno still owed $2,810.

Experian's error was short-lived. By March 10, 2022, Experian's issued an updated credit report showing that Bueno's account with Upstart Network had been discharged in bankruptcy. *See* 3/10/22 Credit Report, at 4 (Dckt. No. 14-2). The credit report was inaccurate for less than two months.

Bueno alleges "[u]pon information and belief" that the inaccuracy negatively affected her credit score and debt-to-income ratio. *Id.* at ¶ 81. She also claims that the inaccuracy limited her ability to get new credit on three occasions.

First, she claims that she "applied for an AT&T cell phone, but due to the inaccurate reporting of the Account by Defendant, the down payment was too high, and she couldn't afford it." *Id.* at ¶ 82. Second, Bueno "also applied for a T-mobile phone and was told the same thing." *Id.* Third, Bueno "applied for a Clarity/Big Picture Loan but due to the inaccurate reporting of the Account by Defendant, the interest rate was too high, and she declined the offer." *Id.* at ¶ 83.

Bueno also claims emotional harm from Experian's error. She "suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety." *Id.* at ¶ 85.

Distressed by the inaccuracies, Bueno sued Experian. Her complaint has a single count. She alleges that Experian violated the Fair Credit Reporting Act by inaccurately listing her account with Upstart Network as open on her credit report. *Id.* at ¶¶ 86–114; 15 U.S.C. § 1681e(b).

3

When the complaint arrived in the courthouse, this Court had questions about whether Bueno had suffered an injury in fact sufficient for Article III standing. *See* 2/4/22 Order (Dckt. No. 4). The Court noted that Bueno alleged, "'[u]pon information and belief,' that her credit score would have been better if it had shown a zero balance," without supporting or explaining that allegation. *Id.*

This Court asked for facts to fill in the picture. "If Plaintiff is alleging that the phone companies demanded a high down payment because of the outstanding debt of $2,810, and not because Plaintiff recently filed for bankruptcy, Plaintiff must provide the factual basis for that allegation." *Id.* Plaintiffs' other allegations were "generic" and "pure boilerplate." *Id.* So, the Court directed Bueno to "file a statement addressing whether Plaintiff has suffered an injury in fact and thus has standing to sue under Article III." *Id.*

Bueno later filed a declaration, but it largely rehashed the complaint's allegations. *See* Bueno Decl. (Dckt. No. 11). Bueno does not know, one way or the other, whether her credit score went down as a result of the inaccuracy. She does not make any allegation about what her credit score was before the mistake, or after the mistake.

Instead, she makes some general statements about borrowers, based on "research [she has] done." *Id.* at ¶ 8. Her "understanding" is that the credit scoring algorithms would expect that someone who had discharged debts in bankruptcy would not have outstanding debts.[1] *Id.*

That statement, however, speaks to the existence of debt. It does not address whether the existence of debt post-bankruptcy would cause a credit score to go down.

---

[1] The declaration is stiff and wooden. It reads like something drafted by a lawyer to explain how credit scores work. It does not capture the personal experience of Bueno with any feel of humanity. It provides no information about her actual credit score. She doesn't reveal, for example, what her credit score was on any particular date. And she offers no concrete facts to tie the denial of credit by AT&T and the others to the inaccuracy in her credit report.

Bueno also "understand[s] that nearly all lenders also use information that does not impact credit scores when deciding whether to provide credit." *Id.* at ¶ 11. She "[doesn't] know for sure yet," but she "suspect[s]" that her debt-to-income ratio led to the denial of her request for credit at AT&T and T-Mobile. *Id.* at ¶ 12.

Finally, Bueno reiterated that "dealing with Experian's inaccurate reporting has been incredibly stressful and demoralizing." *Id.* at ¶ 13. Bueno has "had trouble sleeping" and has experienced "stress and frustration." *Id.* at ¶¶ 15–16. She blames the inaccurate credit report for the relationship problems that she's having with her boyfriend. *Id.* at ¶ 16.

After Bueno filed her declaration, Experian moved to dismiss the case for lack of subject matter jurisdiction. *See* Mtn. to Dismiss (Dckt. No. 12). Experian raised a factual challenge to subject matter jurisdiction, meaning that "the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction." *See* Mem. in Support of Mtn. to Dismiss, at 6 (Dckt. No. 13) (quoting *Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)); *see also id.* at 7 n.3 ("Experian brings a factual attack on Plaintiff's standing . . . .").

Experian argued that Bueno has not suffered a concrete injury sufficient for Article III standing. *Id.* at 6–10. Specifically, Experian argued that Bueno has not alleged anything in the credit report that "is remotely harmful." *Id.* at 6. Not all inaccuracies are *harmful* inaccuracies.

Experian points out that credit reports categorize information into two buckets: "Your Potentially Negative Account Activity," and "Your Positive Account Activity." *See* 1/21/22 Credit Report, at 1, 3 (Dckt. No. 14-1). So, there is a bad bucket, and a good bucket.

The section with "Your Potentially Negative Account Activity" summarizes the information in the report that casts the debtor in a negative light. "The most common items in this section are late payments, accounts that have been charged off or sent to collection, accounts

5

settled for less than full value, and items that may need closer attention, such as transferred accounts." *Id.* at 1. To underscore the point, the credit report includes a symbol for a warning sign: a black triangle/pyramid with an exclamation point in it.

That section of Bueno's report listed several debts that were discharged in bankruptcy. The discharged debts included two Capital One credit cards, a loan from ADS/Comenity Bank, and a loan from Self-Help Federal Union. *Id.* at 3–4. All of that debt was discharged in bankruptcy. And the discharge of that debt was "Negative."

On the other end of the spectrum, the section entitled "Your Positive Account Activity" summarizes information that casts the debtor in a positive light. "These accounts may stay on your credit report for as long as they are open. Closed or paid-off accounts may continue to appear on your report for up to 10 years. Each of the items in this section has a positive payment history, meaning that no delinquencies or derogatory statuses are reported in the displayable payment history." *Id.* at 3.

The credit report even gave the debtor a pat on the back. A cheery "thumbs up" symbol appeared next to the heading. *Id.* And then, the credit report even complimented the debtor for a job well done. A checkmark appeared, showing positive progress. *Id.* Congratulations soon followed: "Great job paying these accounts on time! Payment history is the biggest factor of your credit score." *Id.*

That framework sets the stage for the inaccurate information about Bueno's debt to Upstart Network. That debt did *not* appear in the section entitled "Your Potentially Negative Account Activity." Instead, it appeared in the section entitled "Your Positive Account Activity." *Id.* at 4. It was a positive, not a negative.

In fact, the chart showed Bueno's history of paying down the debt. She owed $3,401 in October 2020, but owed only $2,887 in May 2021. *Id.* The report showed regular monthly payments. *Id.* She paid the amount owed, each and every month, through May 2021.

The most recent balance on the report was $2,810 as of June 2021. *Id.* The report did not reveal what happened in the intervening months (recall that the credit report was dated January 2022). But here's the key point: the intervening history was not negative. The "Status" was "Open/Never late." *Id.*

Experian did prepare an inaccurate credit report. But the inaccurate information painted Bueno in a positive light, not a negative light. The loan from Upstart Network was listed in the "Positive" section of the report, not the "Negative" section of the report.

The light darkened when Experian corrected the mistake and issued a new credit report in March 2022. In the updated report, Experian moved the reference to the loan from Upstart Network. It no longer appeared in the positive section of the report.

Instead, that debt moved to the section about "Your Potentially Negative Account Activity." *See* 3/10/22 Credit Report, at 3 (Dckt. No. 14-2). The report delivered the bad news: "Discharged through Bankruptcy Chapter 7/Never late." *Id.* Instead of a "thumbs up" and a pat on the back, she received a warning sign.

Putting all of that together, Experian prepared an inaccurate credit report. But the inaccuracy appears to have helped Bueno, not hurt her. That credit report made no mention of the bankruptcy discharge for the debt owed to Upstart Network. That loan was listed as a "Positive," not a "Negative." And when Experian fixed the error, the corrected credit report listed the discharged debt as a "Negative." So, if anything, the mistake painted her credit in a better light than it should have.

It is hard to seeing how painting someone in a positive light is an injury. The report didn't paint her in a worse light than she deserved. The report painted her in a better light than she deserved. A windfall isn't an injury.

A recent decision in this District is almost squarely on point. *See Stagger v. Experian Info. Sols., Inc.*, 2022 WL 632838 (N.D. Ill. 2022) (Tharp, J.). In *Stagger*, Judge Tharp addressed a claim about an inaccurate credit report that showed an outstanding debt after a bankruptcy. There, as here, the credit report was too generous to the debtor.

After the plaintiff was "discharged from bankruptcy, Experian Information Solutions, Inc., prepared credit reports that inaccurately reported a debt that had been discharged." *Id.* at *1. The credit report listed the discharged debt "under Positive Account Activity" and "as 'Open/Never Late.'" *Id.* The outstanding balance on the plaintiff's debt was $2,426. *Id.*

Judge Tharp held that the court lacked subject matter jurisdiction because the plaintiff suffered no injury. There was nothing inherently defamatory about the inaccurate reporting. *Id.* at *2 ("Experian's inaccurate statement, however, was not defamatory. Inaccurately stating that a debt is 'Open/Never Late' under positive activity is nothing like reporting an unpaid debt without including that the debt is disputed or an alert labeling a consumer a potential terrorist, drug trafficker, or serious criminal.").

In fact, the inaccuracy might have *helped* her, because it showed that she was paying her debts on time. "If anything, it cast Stagger in a more positive light financially than she deserved. The inaccuracy indicated that Stagger paid her debts and was indeed beneficial to Stagger's credit score." *Id.* at *2.[2]

---

[2] The plaintiff in *Stagger* appealed, and this Court called attention to existence of that appeal in one of its orders. *See* 1/4/23 Order (Dckt. No. 63). The Court directed "the parties to file a notice of supplemental authority within one week of the Seventh Circuit's decision, and provide a copy of any opinion." *Id.* This Court recently discovered on its own that the parties in *Stagger* had settled on appeal before the

So too here. Bueno's credit report did not paint her as a deadbeat who doesn't pay her creditors. Instead, the report listed the debt in a positive light, as demonstrated by its appearance in the "Positive Account Activity" section.

To establish injury in fact, a plaintiff must show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted). "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id.* at 340. The injury must be "'real,' and not 'abstract.'" *Id.*

The Supreme Court made clear in *Spokeo* that an inaccurate credit report does not automatically lead to an injury in fact that supports standing. *Id.* at 342 ("[N]ot all inaccuracies cause harm or present any material risk of harm."). The inaccuracy must have caused harm or created an "imminent and substantial" risk of future harm. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021). Not all mistakes are harmful. Some are neutral. And some are helpful.

Based on the case at hand, it is hard to see how Bueno suffered a concrete, actual injury. Experian prepared a credit report that failed to show her discharged debt to one creditor. That error made her look better, not worse, than it should have. Instead of a warning sign, she received a "thumbs up." And it's hard to see how a "thumbs up" hurts anybody.

---

Seventh Circuit reached a decision. The parties filed a notice of settlement in the Court of Appeals on March 3, 2023. *See Stagger v. Experian Info. Sols., Inc.*, No. 22-1353 (7th Cir. 2022) (7th Cir. Dckt. No. 60). The settlement took place weeks ago, but the parties did not notify this Court – even though the same counsel represent the parties in both cases.

9

Bueno floats a related theory about her debt-to-income ratio. She points out that the inaccurate report listed the outstanding debt as $2,810, meaning that she owed that much to Upstart Network at the time of the report.

Each of us can handle only so much debt relative to our incomes. So, any debt owed to one creditor is debt that could not be owed to another creditor. Racking up amounts on the tab means that there is less room on the remaining tab for anything else.

Under Bueno's theory, listing the debt as owed to Upstart Network could have distorted her debt-to-income ratio. There was less room for *more* debt, which could have caused AT&T and the other potential creditors to turn her down.

Maybe. But at this point, that theory is just a theory. The complaint does not allege that Bueno's would-be creditors ever took her debt-to-income ratio into account when they denied her credit (let alone did so with Experian's report). And there are no facts to support that theory, either. *See Stagger*, 2022 WL 632838, at *3 ("She does not allege facts, let alone present evidence, that could prove that she was harmed by a higher debt-to-income ratio; she does not even allege that a lender calculated her debt-to-income ratio based on a report from Experian.").

By and large, Judge Tharp's decision in *Stagger* is on point. That said, there are few differences between this case and *Stagger*.

First, in *Stagger*, Experian presented evidence "that the inaccuracy [in the credit report] actually *increased* Stagger's credit score." *Stagger*, 2022 WL 632838, at *2 (emphasis added). That evidence was not presented in this case. The parties here have not pinned down the credit scores before and after the inaccurate report, or before and after the correction.[3]

---

[3] Experian explained that its credit reports "typically provide consumers with their FICO score at the time they are generated." *See* Mem. in Support of Mtn. to Dismiss, at 7 (Dckt. No. 13). But Bueno's credit reports do not contain a credit score because "FICO's credit scoring model requires at least one undisputed qualifying account in a consumer's credit file to have been updated within the past six

10

Second, Judge Tharp allowed discovery into the existence of an injury. And this Court will too. Experian is bringing a fact-based challenge to the existence of standing, so this Court will allow the parties to unearth the facts and build a record. Maybe the case will look different after the full facts come to light. Or maybe not. But in the meantime, the allegations of an injury in the complaint are not enough.

The only other injury is emotional distress. But the Seventh Circuit has also been clear that emotional distress is inadequate to provide standing in this context. *See, e.g.*, *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) ("[Plaintiff] further testified that she experienced emotional distress arising from her concern about being sued for the debt. But worry, like confusion, is insufficient to confer standing in this context."); *Wadsworth v. Kross, Lieberman & Stone, Inc.*, 12 F.4th 665, 668 (7th Cir. 2021) ("As our bevy of recent decisions on [Federal Debt Collection Practices Act] standing makes clear, anxiety and embarrassment are not injuries in fact.").

For the foregoing reasons, Experian's motion to dismiss the complaint for lack of subject matter jurisdiction (Dckt. No. 12) is granted. The Court will allow the parties to pursue jurisdictional discovery, to give Bueno a chance to lay a factual foundation to stand on.

Date: March 27, 2023

Steven C. Seeger
United States District Judge

---

months." *Id.* "Plaintiff's credit file did not meet this criteria, and thus her Experian credit reports could not generate a FICO credit score." *Id.*; *see also* Def.'s Reply Br., at 7 (Dckt. No. 32); *see also* Mem. in Support of Mtn. to Dismiss, at 7 (Dckt. No. 13). So, maybe additional digging will not yield paydirt when it comes to discovering the before-and-after credit scores.