**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ANGELICA BUENO, YVONNE BRYANT, and CHRISTINE WHITE, on behalf of themselves and all others similarly situated, | **Case No.: 1:22-cv-00617** |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| v. | **AND** |
| EXPERIAN INFORMATION SOLUTIONS, INC.,  | **DEMAND FOR JURY TRIAL** |
| Defendant. | 1. **FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiffs Angelica Bueno, Yvonne Bryant, and Christine White ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this complaint for injunctive relieve and damages arising out of the systematic issuance of erroneous consumer reports in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by Defendant Experian Information Solutions, Inc. ("Experian").

## I.       PRELIMINARY STATEMENT

1.       Defendant has erroneously reported legally and properly discharged debts of Plaintiffs and the Class as due and owing, with consistent and knowing disregard for their rights and its own statutory obligations.

2.       Defendant has negligently and willfully failed to employ reasonable procedures – including procedures readily available to it of which it is aware – to ensure maximum possible accuracy of the consumer reports they publish regarding Plaintiffs and members of the Class.

1

3. Defendant's conduct violates the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*

## II.    INTRODUCTION

4. Plaintiffs' Complaint arises from violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* by the Defendant.  Plaintiffs contend Defendant failed to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' "consumer reports" as defined in 15 U.S.C. § 1681a(d), and consequently reported inaccurate information about Plaintiffs.  "Consumer reports" under 15 U.S.C. § 1681a(d) include credit reports obtained by third parties as a factor in establishing Plaintiffs' eligibility for credit and results in either a hard or soft inquiry after the Plaintiffs' bankruptcy discharge.

## III.    JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because Plaintiffs allege violations of the Fair Credit Reporting Act, a federal law. *See* 15 U.S.C. § 1681p (FCRA) (permitting actions to enforce liability in an appropriate United States District Court).

6. Venue in the Northern District of Illinois is proper pursuant to 28 U.S.C. § 1391 because Defendant regularly transact business within this District, is otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## IV.    PARTIES

7. Plaintiffs incorporate herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

8. Plaintiff Angelica Bueno is a natural person who resides in Hickory Hills, Cook County, Illinois.

2

9.      Plaintiff Yvonne Bryant is a natural person who resides in Chicago, Cook County, Illinois.

10.      Plaintiff Christine White is a natural person who resides in Chicago, Cook County, Illinois.

11.      Plaintiffs are all "consumer[s]" as defined by the FCRA, 15 U.S.C. § 1681a(c).

12.      Defendant Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f)).  On information and belief, Experian is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 USC § 1681a(d), to third parties. Experian's principal place of business is located at 475 Anton Boulevard, Costa Mesa, California 92626.

13.      During all times pertinent to this Complaint, Defendant was authorized to conduct business in the State of Illinois and conducted business in the State of Illinois on a routine and systematic basis.

14.      Defendant regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Defendant regularly furnishes consumer reports to third parties for monetary compensation, fees, and other dues, using means and facilities of interstate commerce, and are therefore "consumer reporting agencies" as defined by 15 U.S.C. § 1681a(f) of the FCRA.

15.      During all times pertinent to this Complaint, Defendant acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

3

16.     Any violations by Defendant were not in good faith, were knowing, negligent, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

## V.     FACTUAL BACKGROUND

17.     Plaintiffs incorporate by reference all of the above paragraphs of this Class Action Complaint as though fully set forth at length herein.

18.     The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine public confidence, which is essential to the continued functioning of the banking system.

19.     Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

20.     The FCRA is intended to ensure consumer reporting agencies ("CRAs") exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy because CRAs have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

21.     Defendant, one of the three major consumer reporting agencies (at times referred to collectively as "the CRAs," and individually as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiffs and other consumers through the sale of consumer reports.

22.     Defendant regularly purchases and obtains consumer bankruptcy information to include in consumer reports.

23. "Consumer reports" under 15 U.S.C. § 1681a(d) include credit reports obtained by third parties as a factor in establishing Plaintiffs' eligibility for credit and results in either a hard or soft inquiry after Plaintiffs' bankruptcy discharge.

24. Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

25. Defendant obtains consumer information from various sources. Some consumer information is sent directly to Defendant by furnishers, and other information is independently gathered by Defendant from third-party providers/vendors or repositories, like computerized reporting services like PACER and Lexis-Nexis.

26. Defendant regularly seeks out and procures consumer bankruptcy filing and discharge information, with the intention of including it in the consumer reports Defendant sells to third parties for a profit.

27. The diligence Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers' debts.

28.     Defendant's unreasonable policies, procedures, and/or algorithms consistently fail to identify and update pre-bankruptcy debts as required by § 1681e(b).

29.     Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, furnished/reported information, and/or information contained in its own files.

30.     The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions.

31.     Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, date of delinquencies contained in Defendant's reports.

32.     The information Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines their FICO Scores.

33.     FICO Scores are calculated using information contained in Defendant's consumer reports.

34.     FICO and other third-party algorithms use variables or "attributes" derived from a consumer report to calculate a person's "credit score," which is a direct reflection of their creditworthiness.

35.     FICO Scores factor in the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

    a.  "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the

severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower a consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on their credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that a consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact a consumer's credit score.

36.    All Lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms. Lenders request that consumers submit the amount of their income with applications for credit.

37.    DTI compares the total amount a consumer owes to the total amount a consumer earns.

38.    DTI is a separate approval criterion for lenders, in addition to credit scores.

39.    Defendant regularly provides information that allows all lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by Defendant.

40.    A consumer's income, however, is not included in their consumer report; only their "amount of debt" is. Consumers enter/submit their income on credit applications.

41.    The higher the amount of reported debt that a consumer has, or appears to have, the worse the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms (e.g., higher interest rates and lower credit limits).

7

42.     A consumer who has obtained a bankruptcy discharge and has an account that is inaccurately reporting with outstanding or past due balances after the bankruptcy discharge suffers greater harm than if that account were accurately reporting with a zero-dollar balance.

43.     Defendant is aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is that all statutorily dischargeable debts, other than those that have been reaffirmed or successfully challenged in an adversary proceeding court, are discharged.

44.     However, Defendant also knows that it is rare for a pre-petition debt to be reaffirmed or successfully challenged in an adversary proceeding.

45.     Further, Defendant knows that if reaffirmation agreements or adversary proceedings exist, they will be explicitly identified on an individual consumer's bankruptcy docket report.

46.     Additionally, information indicating whether a specific debt was reaffirmed or successfully challenged through an adversary proceeding (rather than discharged), can be easily retrieved from the same sources from which Defendant independently obtains consumer bankruptcy case information.

47.     Defendant also receives information about account reaffirmations or other discharge exceptions directly from furnishers of account/tradeline information.

48.     Despite the availability of accurate consumer information, Defendant regularly reports inaccurate information about accounts after consumers receive a Discharge Order.

49.     Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiffs, who have been discharged from Chapter 7 Bankruptcy.

50.     Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on information they know is incomplete or inaccurate.

51.     After a bankruptcy is discharged, Defendant also routinely relies on furnisher data, even though the furnisher has ceased updating an account upon the filing of a bankruptcy and the account information is "Stale."

52.     Defendant defines Stale accounts as "open accounts (current or delinquent) with a balance amount greater than zero which have not been updated in more than 90 days."[1] Experian identifies and tracks these accounts for every data furnisher.

53.     Defendant knows that many furnishers cease updating accounts once a bankruptcy has been filed by that consumer, yet Defendant still unreasonably relies on those data furnishers after a bankruptcy has been discharged even though Experian knows the accounts are Stale.

54.     Consequently, Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendant regularly accesses, or sourced through Defendant's independent and voluntary efforts.

55.     Defendant routinely reports inaccurate and materially misleading information about consumers like Plaintiffs, without verifying or updating it as required by § 1681e(b).

56.     Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendant's own files.

---

[1] Experian's Metric Report® is provided to every furnisher of data to Experian. The report is automatically generated by Experian every month and provides information to that furnisher about its data submissions Experian has rejected, tradeline submissions, stale accounts, and other data. https://www.experian.com/business/products/metric-report (last visited 04/23/23).

57.     Defendant implemented an automated software "bankruptcy scrub" procedure in 2009 following a settlement agreement in *White v. Experian Info. Sols., Inc*., No. SACV 05-1070 DOC (MLGx), (C.D. Cal. 2008), which will automatically update certain accounts to zero balance and "discharged in bankruptcy" when they predate a Chapter 7 bankruptcy filing date.

58.     Experian's bankruptcy scrub identifies which pre-petition accounts are dischargeable but ignores non-dischargeable accounts (such as alimony or child support).

59.     Experian's bankruptcy scrub fundamentally relies on the default rule that all dischargeable pre-petition debts are in fact discharged through a successful Chapter 7 bankruptcy. In other words, if an account was opened before the bankruptcy was filed, upon Experian's notice from Lexis/Nexis of a discharged bankruptcy, Experian will overwrite any open accounts that meet certain criteria, as discharged with zero balance, regardless of what the furnisher has reported (or ceased reporting).

60.     However, in Experian's automated software bankruptcy scrub, Experian intentionally ignores dischargeable open Stale accounts with balances owed, even though under the default Chapter 7 rule, such debts are undisputedly considered discharged.

61.     Experian will only scrub (correct) an account that is 30 days late or worse (charge-off, collection, etc.) even though there is no distinction in the bankruptcy code to preclude the discharge of accounts that are not yet "late."

62.     Defendant's bankruptcy scrub does not consider whether an account is reporting a balance greater than zero; it also does not consider whether an account has not been updated since the bankruptcy was filed (Stale).

63. The settlement agreement in *White v. Experian Info. Sols., Inc*., does not contemplate Stale accounts and therefore does not instruct or indicate how Experian should report such accounts.

64. Experian has no basis for reliance upon the *White* settlement agreement insofar as Stale Accounts are considered.

65. Defendant's reliance on furnishers when their reporting is Stale (not updated since before the petition) is unreasonable.

66. Defendant also knows that failing to report the effect of a discharge on consumer account tradelines, while reflecting a bankruptcy on a consumer report, would reasonably be understood to declare to the world that the consumer had been in a bankruptcy but had not received a discharge of a particular account. This not only inaccurately/incorrectly reflects an outstanding debt, but also would reasonably suggest to a consumer and those reviewing the consumer's consumer report that the consumer was guilty of a bad act for which they did not deserve a discharge of a particular debt.[2]

67. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate credit reporting following a Chapter 7 discharge, especially for Stale accounts reporting open balances as owed.

68. Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting procedures. More specifically, Defendant is on continued notice that its inadequate procedures regularly result in the reporting of inaccurate balances, account statuses, payment histories, and payment statuses.

---

[2] Indeed, a bankruptcy discharge is for the "honest but unfortunate debtor," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and will not be provided to someone who filed bankruptcy in bad faith, failed to report assets, fraudulently transferred assets, engaged in reprehensible pre-bankruptcy conduct such as fraud, defalcation, or embezzlement, or caused willful and malicious injury. 11 U.S.C. §§ 727(a), 523(a).

11

*Allegations Specific to Credit Reporting of Plaintiff Angelica Beuno*

69.     Plaintiff Angelica Bueno filed a "no asset" Chapter 7 Bankruptcy on or about July 2, 2021, in the United States Bankruptcy Court for the Northern District of Illinois (Case No. 21-08120).

70.     Plaintiff Angelica Bueno received an Order of Discharge on or about September 22, 2021.

71.     Thereafter, Plaintiff Angelica Bueno was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff Angelica Bueno's Discharge Order, all of her dischargeable debts had zero-dollar balances.

72.     Upon information and belief, Defendant prepared one or more consumer reports concerning Plaintiff Angelica Bueno after she was discharged from Chapter 7 Bankruptcy.

73.     Defendant obtained notice of Plaintiff Angelica Bueno's bankruptcy discharge through its routine, independent collection of consumer information from third-party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff Angelica Bueno's consumer reports.

74.     In the Public Records section of Plaintiff Angelica Bueno's consumer report, Defendant included the bankruptcy case number, court, filing date, and the fact that Plaintiff Angelica Bueno's bankruptcy had been discharged.

75.     Defendant also reported Plaintiff Angelica Bueno's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual, or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

76.     Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance unless a furnisher provides information showing that a specific debt was excluded from the discharge.

77.     Defendant should have reported all of Plaintiff Angelica Bueno's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy and/or with a zero-dollar balance.

78.     Defendant failed to report all of Plaintiff Angelica Bueno's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy and/or with a zero-dollar balance.

79.     Defendant inaccurately reported Plaintiff Angelica Bueno's Upstart Network Account (the "Upstart Account"), starting with L7268, and opened in October 2020, which predated her bankruptcy filing.

80.     The Upstart Account was discharged in Plaintiff Angelica Bueno's bankruptcy on or about September 22, 2021.  Therefore, the Upstart Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

81.     However, Experian inaccurately reported the discharged Upstart Account with a Status of "Open" and a balance of "$2,810," instead of a zero-dollar balance, and a monthly payment obligation of $127.

82.     Defendant reported Status Updated date of June 2021, a Balance Updated date of June 13, 2021, and a Payment History that showed current up until June 2021 when the Payment History stops.

83.    Defendant had ceased reporting or updating the Upstart Account with any new information after the filing of Plaintiff Angelica Bueno's Chapter 7 bankruptcy.

84.    Defendant knows that the Upstart Account has not been updated since prior to Plaintiff Angelica Bueno's Chapter 7 filing and that the Upstart Account is Stale.

85.    Experian did not indicate that the Upstart Account was discharged in bankruptcy or report the Upstart Account with a zero-dollar balance, despite reporting Plaintiff Angelica Bueno's bankruptcy in the public records section of her consumer report and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 7," and/or with zero-dollar balances.

86.    The Upstart Account was essentially frozen in time by Defendant based on a pre-bankruptcy balance and status on Defendant's December 21, 2021 consumer report. Consequently, Defendant inaccurately reported the actual balance, status, and payment obligations on the Upstart Account.

87.    Defendant does not have reasonable procedures in place to detect and correct pre-Chapter 7 debts which continue to report balances after Defendant reports a discharge.

88.    Defendant does not have reasonable procedures in place to detect and correct or suppress pre-Chapter 7 debts reporting balances, where Defendant is aware that the furnisher has ceased all account updates after the bankruptcy was filed.

89.    Notably, the other two national consumer reporting agency/agencies, Equifax, and Trans Union, did not inaccurately report the Upstart Account such as Experian did.

90.    Upstart Network furnished information to Defendant that indicated the Upstart Account was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but Defendant rejected or otherwise overrode the data it received.

14

91. Alternatively, Defendant knew from past experiences that Upstart Network furnished inaccurate information regarding discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

92. Nevertheless, Defendant blindly relied on the information provided by Upstart Network even though it conflicted with information contained in Defendant's records, contradicted other information Defendant reported about Plaintiff Angelica Bueno, or neglected Defendant's knowledge regarding her bankruptcy and discharge.

93. If Upstart Network did not furnish data to Defendant that the Upstart Account was discharged, Defendant's blind reliance on the furnisher, Upstart Network, was unreasonable.

94. Defendant was unreasonable in failing to consider the fact that since Upstart Network ceased updating the Upstart Account after Plaintiff Angelica Bueno's bankruptcy was filed, Upstart Network was an unreliable furnisher in this instance.

95. Defendant inaccurately reported that Plaintiff Angelica Bueno owed a balance that she did not actually owe, and also reported inaccurate account statuses.

96. Defendant inaccurately reported the Upstart Account with a balance owed after the Account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

97. Defendant failed to indicate that the Upstart Account had a zero-dollar balance and/or was discharged in Chapter 7 Bankruptcy.

98. Defendant's reporting of the Upstart Account is patently false and therefore inaccurate.

99. If not patently false, Defendant's reporting of the Upstart Account is materially misleading and therefore inaccurate.

15

*Allegations Specific to Credit Reporting of Plaintiff Yvonne Bryant*

100.    Plaintiff Yvonne Bryant filed a voluntary, "no asset" Chapter 7 Bankruptcy on or about August 9, 2022, in the United States Bankruptcy Court for the Northern District of Illinois (Case No. 22-08982).

101.    Plaintiff Yvonne Bryant received an Order of Discharge on or about November 17, 2022.

102.    Thereafter, Plaintiff Yvonne Bryant was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff Yvonne Bryant's Discharge Order, all of her dischargeable debts had zero-dollar balances.

103.    Upon information and belief, Defendant prepared one or more consumer reports concerning Plaintiff Yvonne Bryant after she was discharged from Chapter 7 Bankruptcy.

104.    Defendant obtained notice of Plaintiff Yvonne Bryant's bankruptcy discharge through its routine, independent collection of consumer information from third-party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff Yvonne Bryant's consumer reports.

105.    In the Public Records section of Plaintiff Yvonne Bryant's consumer report, Defendant included the bankruptcy case number, court, filing date, and the fact that Plaintiff Yvonne Bryant's bankruptcy had been discharged.

106.    Defendant also reported Plaintiff Yvonne Bryant's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual, or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

107.    Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance unless a furnisher provides information showing that a specific debt was excluded from the discharge.

108.    Defendant should have reported all of Plaintiff Yvonne Bryant's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy and/or with a zero-dollar balance.

109.    Defendant failed to report all of Plaintiff Yvonne Bryant's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy and/or with a zero-dollar balance.

110.    Defendant inaccurately reported Plaintiff Yvonne Bryant's Regional Finance Account (the "Regional Finance Account"), ending in 6817 and opened in January 2022, which predated her bankruptcy filing.

111.    The Regional Finance Account was discharged in Plaintiff Yvonne Bryant's bankruptcy on or about November 17, 2022.  Therefore, the Regional Finance Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

112.    However, Experian inaccurately reported the discharged Regional Finance Account with a Status of "Open" and a balance of "$2,805" (instead of a zero-dollar balance), and a monthly payment obligation of $126.

113.    Defendant had ceased reporting or updating the Regional Finance Account with any new information after the filing of Plaintiff Yvonne Bryant's Chapter 7 bankruptcy.

114.    Defendant knows that the Regional Finance Account has not been updated since prior to Plaintiff Yvonne Bryant's Chapter 7 filing and that the Regional Finance Account is Stale.

17

115.    Experian did not indicate that the Regional Finance Account was discharged in bankruptcy or report the Regional Finance Account with a zero-dollar balance, despite reporting Plaintiff Yvonne Bryant's bankruptcy in the public records section of her consumer report and reporting other pre-bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 7," and/or with zero-dollar balances.

116.    The Account was essentially frozen in time by Defendant based on a pre-bankruptcy balance and status. Consequently, Defendant inaccurately reported the actual balance, status, and payment obligations on the Regional Finance Account.

117.    Defendant does not have reasonable procedures in place to detect and correct pre-Chapter 7 debts which continue to report balances after Defendant reports a discharge.

118.    Defendant does not have reasonable procedures in place to detect and correct or suppress pre-Chapter 7 debts reporting balances, where Defendant is aware that the furnisher has ceased all account updates after the bankruptcy was filed.

119.    Regional Finance furnished information to Defendant that indicated Plaintiff's Regional Finance Account was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but Defendant rejected or otherwise overrode the data it received.

120.    Alternatively, Defendant knew from past experiences that Regional Finance furnished inaccurate information regarding discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

121.    Nevertheless, Defendant blindly relied on the information provided by Regional Finance even though it conflicted with information contained in Defendant's records, contradicted

other information Defendant reported about Plaintiff Yvonne Bryant, or neglected Defendant's knowledge regarding her bankruptcy and discharge.

122. If Regional Finance did not furnish data to Defendant that the Regional Finance Account was discharged, Defendant's blind reliance on the furnisher, Regional Finance, was unreasonable.

123. Defendant was unreasonable in failing to consider the fact that since Regional Finance ceased updating the Regional Finance Account after Plaintiff Yvonne Bryant's bankruptcy was filed, Regional Finance was an unreliable furnisher in this instance.

124. Defendant inaccurately reported that Plaintiff Yvonne Bryant owed a balance that she did not actually owe, and also reported inaccurate account statuses.

125. Defendant inaccurately reported the Regional Finance Account with a balance owed after the Regional Finance Account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

126. Defendant failed to indicate that the Regional Finance Account had a zero-dollar balance and/or was discharged in Chapter 7 Bankruptcy.

127. Defendant's reporting of the Regional Finance Account is patently false and therefore inaccurate.

128. If not patently false, Defendant's reporting of the Regional Finance Account is materially misleading and therefore inaccurate.

*Allegations Specific to Credit Reporting of Plaintiff Christine White*

129. Plaintiff Christine White filed a voluntary, "no asset" Chapter 7 Bankruptcy on or about July 29, 2022, in the United States Bankruptcy Court for the Northern District of Illinois (Case No. 22-08530).

130.     Plaintiff Christine White received an Order of Discharge on or about November 1, 2022.

131.     Thereafter, Plaintiff Christine White was not personally liable for any of her dischargeable debts. Upon entry of Plaintiff Christine White's Discharge Order, all of her dischargeable debts had zero-dollar balances.

132.     Upon information and belief, Defendant prepared one or more consumer reports concerning Plaintiff Christine White after she was discharged from Chapter 7 Bankruptcy.

133.     Defendant obtained notice of Plaintiff Christine White's bankruptcy discharge through its routine, independent collection of consumer information from third-party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff Christine White's consumer reports.

134.     In the Public Records section of Plaintiff Christine White's consumer report, Defendant included the bankruptcy case number, court, filing date, and the fact that Plaintiff Christine White's bankruptcy had been discharged.

135.     Defendant also reported Plaintiff Christine White's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual, or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

136.     Defendant is aware that CRAs are generally required to report accounts included in a consumer's Chapter 7 bankruptcy with a status of "discharged through bankruptcy," and/or with a zero-dollar balance unless a furnisher provides information showing that a specific debt was excluded from the discharge.

137.    Defendant should have reported all of Plaintiff Christine White's dischargeable, pre-petition debts as included in or discharged in Chapter 7 Bankruptcy and/or with a zero-dollar balance.

138.    Defendant failed to report all of Plaintiff Christine White's dischargeable, pre-petition debts as included in or discharged in Chapter 7 bankruptcy and/or with a zero-dollar balance.

139.    Defendant inaccurately reported Plaintiff Christine Prestige Financial Services Account (the "Prestige Account"), ending in 2826 and opened in May 2022, which predated her bankruptcy filing.

140.    The Prestige Account was discharged in Plaintiff Christine White's bankruptcy on or about November 1, 2022.  Therefore, the Prestige Account should have been reported as discharged in bankruptcy, and/or with a zero-dollar balance.

141.    However, Experian inaccurately reported the discharged Prestige Account with a Status of "Open" and a balance of "$21,428" (instead of a zero-dollar balance), and a monthly payment obligation of $496.

142.    Defendant had ceased reporting or updating the Prestige Account with any new information after the filing of Plaintiff Christine White's Chapter 7 bankruptcy.

143.    Defendant knows that the Prestige Account has not been updated since prior to Plaintiff Christine White's Chapter 7 filing and that the Prestige Account is Stale.

144.    Experian did not indicate that the Prestige Account was discharged in bankruptcy or report the Prestige Account with a zero-dollar balance, despite reporting Plaintiff Christine White's bankruptcy in the public records section of her consumer report and reporting other pre-

bankruptcy accounts as "Discharged/Included in Bankruptcy Chapter 7," and/or with zero-dollar balances.

145.    The Prestige Account was essentially frozen in time by Defendant based on a pre-bankruptcy balance and status. Consequently, Defendant inaccurately reported the actual balance, status, and payment obligations on the Prestige Account.

146.    Defendant does not have reasonable procedures in place to detect and correct pre-Chapter 7 debts which continue to report balances after Defendant reports a discharge.

147.    Defendant does not have reasonable procedures in place to detect and correct or suppress pre-Chapter 7 debts reporting balances, where Defendant is aware that the furnisher has ceased all account updates after the bankruptcy was filed.

148.    Prestige Financial Services furnished information to Defendant that indicated Plaintiff's Prestige Account was included or discharged in bankruptcy, and/or had a zero-dollar balance after the bankruptcy discharge, but Defendant rejected or otherwise overrode the data it received.

149.    Alternatively, Defendant knew from past experiences that Prestige Financial Services furnished inaccurate information regarding discharged debts or, has historically failed to employ reasonable procedures to ensure it properly updates consumer debts after a Chapter 7 Bankruptcy is discharged.

150.    Nevertheless, Defendant blindly relied on the information provided by Prestige Financial Services even though it conflicted with information contained in Defendant's records, contradicted other information Defendant reported about Plaintiff Christine White, or neglected Defendant's knowledge regarding her bankruptcy and discharge.

151. If Prestige Financial Services did not furnish data to Defendant that the Prestige Account was discharged, Defendant's blind reliance on the furnisher, Prestige Financial Services, was unreasonable.

152. Defendant was unreasonable in failing to consider the fact that since Prestige Financial Services ceased updating the Prestige Account after Plaintiff Christine White's bankruptcy was filed, Prestige Financial Services was an unreliable furnisher in this instance.

153. Defendant inaccurately reported that Plaintiff Christine White owed a balance that she did not actually owe, and also reported inaccurate account statuses.

154. Defendant inaccurately reported the Prestige Account with a balance owed after the Prestige Account was discharged in Chapter 7 Bankruptcy and therefore had a zero-dollar balance.

155. Defendant failed to indicate that the Prestige Account had a zero-dollar balance and/or was discharged in Chapter 7 Bankruptcy.

156. Defendant's reporting of the Prestige Account is patently false and therefore inaccurate.

157. If not patently false, Defendant's reporting of the Prestige Account is materially misleading and therefore inaccurate.

*Plaintiffs' Damages*

158. Because Defendant reported an un-owed payment obligation on each of Plaintiffs' consumer reports, upon information and belief, had Defendant accurately reported the Upstart Account, the Regional Finance Account, and the Prestige Account (the "Plaintiffs' Accounts") with a zero balance and without monthly payment obligations, Plaintiffs' credit scores and/or DTI ratios would have been better.

159.    Upon information and belief, in all three instances, Defendant's inaccurate reporting was published to third parties:

      a.  Defendant published the inaccurate Upstart Account information about Plaintiff Angelica Bueno to Credit Karma, AT&T Services, and Clarity/Big Picture Loan.

      b.  Defendant published the inaccurate Regional Finance Account information about Plaintiff Yvonne Bryant to Credit One, Kohls, Discover, and Capital One.

      c.  Defendant published the inaccurate Prestige Account information about Plaintiff Christine White to Capital One, N.A., Avid Acceptance, LLC, Global Lending Service, Ally Financial, Capital One Auto Finance, Synchrony Bank, Exeter Finance, LLC, and Westlake Finance.

160.    After Plaintiff Angelica Bueno's bankruptcy discharge, she applied for an AT&T cell phone, but due to the inaccurate reporting of the Upstart Account by Defendant showing she owed more debt than she actually owed, the down payment was too high, and she couldn't afford it. She also applied for a T-mobile phone and was told the same thing.

161.    Plaintiff Angelica Bueno also applied for a Clarity/Big Picture Loan but due to the inaccurate reporting of the Upstart Account by Defendant, the interest rate was too high, and she declined the offer.

162.    After Plaintiff Yvonne Bryant's bankruptcy discharge, she applied for credit from Discover and Capital One but was denied, upon information and belief, due to the inaccurate reporting of the Regional Finance Account showing she owed more debt than she actually owed.

163.    Plaintiff Yvonne Bryant also applied for credit from Credit One and Kohls and was approved, but for less favorable credit terms (lower credit limit), upon information and belief, due to the inaccurate reporting of the Regional Finance Account.

164.     After Plaintiff Christine White's bankruptcy discharge, she applied for an auto loan to purchase a vehicle but was originally denied by multiple lenders due to the inaccurate reporting of the Prestige Account showing she owed more debt than she actually owed.

165.     Plaintiff Christine White was ultimately forced to purchase a much older and less reliable vehicle than the vehicle which she was originally attempting to purchase, and for much less favorable credit terms (higher interest rate) due to the inaccurate reporting of the Prestige Account.

166.     As a direct result of Defendant's inaccurate reporting, Plaintiffs suffer damages, including credit defamation, a decreased credit score, lower overall creditworthiness, and other financial and reputational harm.

167.     Plaintiffs made the difficult decision to file for bankruptcy, only to learn after they finally received their discharges that they did not receive the "fresh starts" that the law promises.

168.     Additionally, Plaintiffs suffer interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational harm, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## VI.     CLASS ALLEGATIONS

169.     Plaintiffs incorporate by reference all of the above paragraphs of this Class Action Complaint as though fully set forth at length herein.

170.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek to maintain this action as a class action (including any appropriate subclasses), representing a class initially defined as:

> All natural persons residing in the United States who, on or after April 24,
>
> 2018, have had a consumer report relating to them prepared by Experian in

which one or more of their pre-petition tradeline accounts or debts was not reported as discharged despite the fact that such debts had been discharged under Chapter 7 of the Bankruptcy Code, and where such debts were not reported to Experian as late, in default, or charged off by the furnisher prior to the natural person's discharge of Chapter 7 bankruptcy petition.

171. **Ascertainability/ Numerosity**: The class is ascertainable because it is comprised of individuals who can be identified by reference to objective criteria. The names and addresses of the class members are identifiable through the internal business records maintained by Defendant, including email addresses and postal addresses. The class members may be notified of the pendency of this action through mail and/or email. Further, the class members are so numerous that joinder of all is impractical. There are likely tens of thousands of members of the class and, therefore, it would be impracticable to bring all (or even a substantial percentage of) such persons before the Court as individual plaintiffs.

172. **Typicality**: Plaintiffs' claims are typical of the claims of each putative class member because: (1) Plaintiffs have all three have been injured in the same manner as all other class members as a result of Defendant's uniform and woefully inadequate procedures regarding the reporting of debts that have been discharged in Chapter 7 bankruptcy where those debts have gone "Stale," i.e. where the furnisher stops reporting on the debt prior to or upon the filing of the bankruptcy petition, and where the debt was not reported as late, in default, or charged off to Experian; and (2) Plaintiffs' claims and the class member claims are based on the same basic facts and legal theories.

173. **Adequacy of Representation**: Plaintiffs are an adequate representative of the class they seek to represent because: (1) they are willing and able to represent the proposed class and

26

have every incentive to pursue this action to a successful conclusion; (2) their interests are not in any way antagonistic to those of the other class members; and (3) they are represented by counsel experienced in litigating class actions and in litigation claims under the FCRA and other consumer protection statutes. Neither Plaintiffs nor their counsel have interests that prevent vigorous prosecution of the case on behalf of the class. Although Plaintiffs have each suffered cognizable individual injuries directly and proximately caused by Experian, they have chosen to pursue these claims on behalf of the class defined herein.

174. **Predominance of Common Questions of Law or Fact**:  Common questions of both law and fact exist as to all members of the putative class. These questions predominate over questions affecting only individual class members. The principal issues are: (1) whether, in preparing consumer reports concerning individuals who have received a Chapter 7 bankruptcy discharge of "Stale" debts (i.e., debts that the furnisher stops reporting to Experian prior to or upon the filing of the bankruptcy petition, and where the debt was not reported as late, in default, or charged off to Experian), Defendant failed to follow reasonable procedures to ensure maximum possible accuracy of the information pertaining to the status of those debts in accordance with the requirements of 15 U.S.C. § 1681e(b); (2) whether Defendant's failure to comply with the requirements of 15 U.S.C. § 1681e(b) was willful under 15 U.S.C. § 1681n; and (3) whether Defendant's failure to comply with the requirements of 15 U.S.C. § 1681e(b) was negligent under 15 U.S.C. § 1681o.

175. **Propriety of Class Certification Under Fed. R. Civ. P. 23(b)(2)**:  Class certification of all of Plaintiffs' claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted and/or refused to act on grounds generally applicable to the class, thereby making declaratory and final injunctive relief appropriate. Such generally applicable grounds

consist of Defendant's conduct in failing and refusing to follow reasonable procedures to ensure maximum possible accuracy in connection with its reporting of the status of "stale" debts that have been discharged following the issuance of an order approving a consumer's Chapter 7 bankruptcy discharge.

176. **Propriety of Class Certification Under Fed. R. Civ. P. 23(b)(3)**: Class certification of all of Plaintiffs' claims is also appropriate under Fed. R. Civ. P. 23(b)(3). The common questions of law and fact relating to plaintiffs' willful and negligent violation claims predominate over questions affecting only individual members. Moreover, the class action vehicle is superior to other available methods for the fair and efficient adjudication of these claims. For the vast majority of members of the class, the amount of any potential recovery is too small to justify the cost of prosecuting their claims individually, despite the availability of costs and attorneys' fees in the event they were to prevail on the merits, and despite the fact that Defendant's violations of the FCRA, in the aggregate, cost U.S. consumers unfathomable amounts of money in lost credit, insurance, and opportunities. Further, requiring each class member to pursue his or her claim individually would entail needless duplication of effort, would waste the resources of both the parties and the Court, and would risk inconsistent adjudications.

## VII. COUNT I
### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681e(b)

177. Plaintiffs incorporate by reference all of the above paragraphs of this Class Action Complaint as though fully set forth herein at length.

178. The FCRA requires CRAs, like Defendant, to maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

28

179.    Defendant negligently and willfully violated 15 U.S.C. § 1681e(b) by failing to use reasonable procedures to assure maximum possible accuracy of the information it reported about Plaintiffs' pre-bankruptcy debts after Plaintiffs received Discharge Orders.

180.    Defendant independently sought information about Plaintiffs' bankruptcy filing and discharge and voluntarily included it in Plaintiffs' consumer reports.

181.    When Defendant voluntarily procured and reported Plaintiffs' bankruptcy information, it had an obligation to follow reasonable procedures to ensure it reported the bankruptcy discharge and its effects with maximal accuracy.

182.    Defendant received notice of Plaintiffs' bankruptcy discharge through public records, its own files, and information provided by data furnishers.

183.    Individual furnishers of account information also notified Defendant of Plaintiffs' bankruptcy, as evidenced by other tradelines in Plaintiffs' consumer report that are labeled included and discharged in bankruptcy.

184.    Defendant had actual knowledge of Plaintiffs' bankruptcies and Discharge Orders, as evidenced by the information it published in Plaintiffs' consumer reports, including Plaintiffs' bankruptcy case numbers, court, dates of filing, and dates of discharge.

185.    But despite knowledge of Plaintiffs' bankruptcy, Defendant inaccurately reported Plaintiffs' Accounts, which all predated Plaintiffs' Chapter 7 Bankruptcy, with statuses other than "discharged in bankruptcy" and with balances greater than zero, and also reported monthly payment obligations.

186.    Defendant knew or should have known of its obligations under the FCRA, especially those pertaining to reporting discharged debt with a zero-dollar balance.

187.     These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of discharged debts.

188.     Additionally, Defendant possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer files for Chapter 7 Bankruptcy.

189.     Despite knowledge of these legal obligations, Defendant willfully and knowingly breached its duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Defendant deprived Plaintiffs of their rights as consumers under the FCRA.

190.     Not only did Defendant have prior notice of its unreasonable procedures for reporting discharged debts, but it also possessed information from which it should have known the information reported about Plaintiffs was inaccurate.

191.     Defendant knew or should have known that the effect of a Discharge Order in a no-asset Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

192.     Defendant knows that discharged pre-petition debts should not be reported with outstanding balances or monthly payment obligations after the discharge date and should further be reported with a zero-dollar balance.

193.     Yet in this case, Defendant reported the Plaintiffs' Accounts, which all predated Plaintiffs' bankruptcies, with balances owed (instead of a zero-dollar balance) and monthly payment obligations after they were discharged by this Court's associated bankruptcy division.

30

194.    Defendant intentionally ignored the fact that Upstart Network, Regional Finance, and Prestige Financial Services all ceased updating the Plaintiffs' Accounts after Plaintiffs filed for bankruptcy (all of Plaintiffs' Accounts were Stale).

195.    Defendant knows that the Plaintiffs' Accounts have not been updated since Plaintiffs' Chapter 7 filings, and that the reported balance, payment obligation, and status are therefore inaccurate, outdated, and have been superseded by Plaintiffs' Chapter 7 discharges. Defendant, therefore, violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiffs' credit file/consumer report.

196.    Defendant also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information it was reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and reasonably available to Defendant.

197.    Defendant has intentionally chosen to disregard knowingly inaccurate open balances and payment obligations in its reporting for pre-bankruptcy accounts in Defendant's automated "bankruptcy scrubs" it has been employing for over fourteen (14) years.

198.    Defendant's violations of 15 U.S.C. § 1681e(b) were willful.

199.    Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

200.    Defendant's inaccurate reporting damaged Plaintiffs' creditworthiness.

201.    Plaintiffs suffer actual damages, including credit defamation, decreased credit scores, loss of credit opportunities, credit denials, and other financial and reputational harm caused by Defendant inaccurately reporting balances and monthly payment obligations for debts that were

discharged in bankruptcy, and otherwise failing to report that the Plaintiffs' Accounts were discharged in bankruptcy.

202.    Plaintiffs also suffer interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

203.    Defendant is a direct and proximate cause of Plaintiffs' damages.

204.    Defendant is a substantial factor in Plaintiffs' damages.

205.    Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq.*

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Honorable Court enter judgment against Defendant for the following:

(a)     Declaratory judgment that Defendant violated the FCRA, 15 U.S.C. § 1681e(b);

(b)     Entry of a permanent injunction requiring Defendant to adopt credit reporting practices in accordance with the requirements of the FCRA, 15 U.S.C. § 1681e(b);

(c)     An Order certifying all of the claims of the Class alleged herein pursuant to Fed. R. Civ. P. 23(b)(2) or Fed. R. Civ. P. 23(b)(3).

(d)     An award of actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1) or 1681o(a)(1);

(e)     An award of statutory damages pursuant to 15 U.S.C. §§ 1681n(a)(1) and 1681o(a)(1);

(f)     An award of punitive damages, as allowed by the Court pursuant to 15 U.S.C. § 1681n(a)(2),

(g)     Costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2); and

(h)     Such other and further relief as this Honorable Court may deem just and proper, including any applicable pre-judgment and post-judgment interest, and/or declaratory relief.

## IX.     JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues so triable.

RESPECTFULLY SUBMITTED this 24th day of April 2023.

**CONSUMER ATTORNEYS**

*/s/Dawn McCraw*
Dawn McCraw, AZ #035321
Consumer Attorneys
8245 N 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (718) 715-1570
E: dawn@pricelawgroup.com

David A. Chami, AZ #027585
Consumer Attorneys
8245 N 85th Way
Scottsdale, AZ 85258
T: (480) 626-2359
E: dchami@consumerattorneys.com

Syed Hussain, IL #6331378
Price Law Group, APC
420 E Waterside Drive, #3004
Chicago, IL 60601
T: (818) 600-5535
F: (818) 600-5435
E: syed@pricelawgroup.com

*Attorneys for Plaintiff*
*Angelica Bueno*